THE STATE OF KANSAS, *Appellee,* v. ROBERT CARDWELL, *Appellant.*

No. 18,666.

SYLLABUS BY THE COURT.

1. STATUTORY RAPE—*Corpus Delicti May be Proven by Circumstantial Evidence.* On the trial of a criminal action the *corpus delicti*—that some one has committed the crime charged —may be proven in whole or in part by circumstantial evidence the same as any other fact in controversy; the rule being that the best evidence which, in the nature of the case, is attainable should be produced, and it must be so conclusive as to exclude all reasonable doubt, to sustain a conviction.

2. NEW TRIAL — *Newly Discovered Evidence — No Diligence Shown.* A motion for a new trial on the ground of newly discovered evidence, where the affidavits disclose that the defendant knew before the trial the facts proposed to be proven, and having testified on the trial he made no mention of such facts nor made any effort to secure the attendance of the proposed witnesses, is properly overruled.

Appeal from Stafford district court; DANIEL A. BANTA, judge. Opinion filed October 11, 1913. Affirmed.

*Paul R. Nagle,* of Saint John, for the appellant.

*John S. Dawson,* attorney-general, *Robert Garvin,* county attorney, and *Ray H. Beals,* of Saint John, for the appellee.

The opinion of the court was delivered by

SMITH, J.: The appellant was tried, convicted and sentenced for the crime of rape charged to have been committed upon his own daughter, a female under the age of eighteen years. The case presents a sad chapter in the study of criminology. The prosecuting witness, according to her testimony on the trial, swore to a complaint against her father, the appellant, before a justice of the peace and in the presence of the county attorney, the sheriff of the county and the mayor of the city, charging appellant with repeated acts of

sexual intercourse with herself, specifying four separate dates, prior to her eighteenth birthday.  On the trial she testified that the appellant never had carnal intercourse with her, and that the reason for making the complaint was that she wanted to run away from home because her father would not allow her to run on the streets at night with the boys; also that the justice of the peace threatened to have her sent to Beloit (probably meaning the industrial school at Beloit, Kan).  She previously signed a written statement before the county attorney, which she testified she read before signing it.  In this she made the same charges against the appellant.  The appellant's son, Carl, being called as a witness, testified that he had made a statement to the county attorney that he had seen his father and sister in bed together having criminal intercourse, and that his mother caught them and ordered appellant to go outdoors; that a rumpus occurred, and his father got out and struck his mother, and he, Carl, went to a Mr. Tuttle's to have him come over.  On the trial Carl further testified that at the time referred to in his statement to the county attorney nothing occurred between his father and sister; that he did not see them in bed together and that he, the witness, did not go over to Mr. Tuttle's; also that he made the several statements to the county attorney, but that the county attorney scared him into it; that he had never seen the act.

There was also evidence that the appellant, after being arrested and before making the sworn statement to the county attorney, told the sheriff, jailer and others that he was guilty and would plead guilty; that to one witness he boasted of the act with his daughter on her sixteenth birthday, the date of the charge of which he was convicted; also that he went to the county attorney's office with the sheriff, and there, in the presence of the sheriff, county attorney, a notary public, his wife, mother and others, signed and swore to a statement, after it had been read by him, admitting his guilt.

The statement recited that it was freely and voluntarily made, and the county attorney told him that it must be so made, if made.

The appellant took the witness stand on the trial and denied ever having had sexual intercourse with his daughter, and denied it specifically upon each of the three dates the state had elected to rely upon for a conviction. He also testified, as a reason for making the statement to the county attorney, that he was informed that the county attorney had promised his mother that if he pleaded guilty only one charge would be urged against him. This was denied by the county attorney as a witness, and evidence was also produced contradictory of the evidence of the daughter and Carl that either of them had been induced by threats, or otherwise, to make the statements which each admitted having made.

It will be observed that there was no direct evidence in court of the *corpus delicti*—that the crime had in fact been committed, or that the appellant was at any time the perpetrator of the crime charged. The case for the state rests upon extrajudicial admissions and upon circumstantial evidence as to these essential facts. Can the *corpus delicti* of a crime be so established? This question was answered in the affirmative in this state long ago. In *The State v. Winner,* 17 Kan. 298, in the sixth section of the syllabus, it was said:

"In a criminal prosecution, and even in murder in the first degree, the *corpus delicti* may be proved by circumstantial evidence."

In *The State v. Hunter,* 50 Kan. 302, 32 Pac. 37, the doctrine is reaffirmed that in any criminal action conviction may rest on circumstantial evidence alone, including proof of the *corpus delicti.* The appellant cites *The State v. Crawford,* 39 Kan. 257, 17 Pac. 839, and *The State v. Kesner,* 72 Kan. 87, 82 Pac. 720, as opposed to this doctrine, but we do not think either case sustains the contention.

The State v. Cardwell.

That a bald confession of one that he has committed a certain crime, without other evidence or circumstances to corroborate the confession, will sustain a conviction is, we believe, nowhere contended. But it seems to be the general rule, in the states having no express provision requiring evidence that a crime has been committed before incriminating admissions may be introduced against an accused, that any pertinent fact in a criminal case, including the *corpus delicti*, may be established by evidence of admissions of guilt by the accused supported by circumstantial evidence tending to corroborate the admissions; provided all the evidence is sufficient in the estimation of the jury and trial court to establish the guilt of the accused beyond a reasonable doubt. To this may be added the reasonable rule that the law demands, and only demands, the best proof of the *corpus delicti* which, in the nature of the case, is attainable.

Numerous assignments of error are made in the introduction of evidence. Much of this evidence was admitted tentatively and the objectionable portions thereof were withdrawn from the jury by the instructions.

On the motion for a new trial, affidavits of several witnesses were produced in which the affiants deposed that appellant was in their company and not at his home any portion of the day or night of June 23, 1912, the date of the crime of which the appellant was convicted. If these affiants knew where appellant was on that date, appellant should himself have known where he was and who were with him; yet, being a witness, he did not deny being at home on that date nor mention his being with affiants, and no effort to get their evidence is shown to have been made at or prior to the trial.

The motion was properly overruled, and the judgment is **affirmed.**